# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WILLIAM LAPORTE COLLAZO, :
    *Plaintiff,*                :
                           :
    v.                     :        CIVIL ACTION NO. 23-CV-3475
                           :
BRIAN D. ROSENTHAL, *et al.,*   :
    *Defendants.*         :

## MEMORANDUM

**PAPPERT, J.**                                           **December 15, 2023**

William Laporte Collazo, a convicted prisoner currently incarcerated at SCI Greene, filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983, asserting violations of his constitutional rights. Collazo's Complaint ("Compl." (ECF No. 1)), his Motion for Leave to Proceed *In Forma Pauperis* and his prisoner trust fund account statement (ECF Nos. 6, 2) are before the Court.[1] Collazo asserts claims against Brian D. Rosenthal, identified as an employee of Suburban Community Hospital in East Norriton, Pennsylvania, the Superintendent of SCI Chester, and "CCHA of SCI Chester".[2] (Compl. at 2.) For the following reasons, the Court will grant Collazo leave to proceed *in forma pauperis* and will dismiss with prejudice his claims based on his COVID infection. Collazo's remaining federal claims will be dismissed without

---

[1] Collazo also filed a Motion for Copies/Service. (*See* ECF No. 5.) He wants the Court to give him 285 Forms and serve the Complaint. (*Id.*) In light of the Court's disposition of the Complaint on screening, the Court denies the Motion.

[2] Collazo does not identify the person or entity which he refers to as "CCHA of SCI Chester." Because Collazo's claims against "CCHA of SCI Chester" are undeveloped, they suffer from the same defects the Court will discuss regarding the other Defendants, and the claims against "CCHA of SCI Chester" will also be dismissed without prejudice. If Collazo files an amended complaint, he must identify the person or entity to whom he refers without using an acronym.

prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). His state law claims will be dismissed without prejudice for lack of subject matter jurisdiction. Collazo will be granted leave to file an amended complaint.

I[3]

Collazo's allegations are brief and undeveloped. He alleges that the events giving rise to his claims occurred at SCI Chester in December 2021. (Compl. at 2.) At that time, Collazo alleges that he had a kidney removed and that an error occurred during the surgery. (*Id.* at 3.) Collazo also alleges that, following the surgery, he was housed in a unit with inmates who had tested positive for COVID-19 and that he contracted the infection. (*Id.*) Collazo claims he experienced pain, shortness of breath, dizziness, body aches, and internal bleeding, and suffered or suffers from depression and PTSD (which the Court understands to refer to post-traumatic stress disorder). (*Id.*) He also claims he required blood transfusions. (*Id.*) It is unclear whether these alleged injuries are related to Collazo's surgery, his COVID infection, or something else.

Collazo asserts that Defendants Rosenthal and the Superintendent at SCI Chester delayed and denied him medical treatment and exposed him to COVID-19. (*Id.*) He requests an award of money damages.[4] (*Id.* at 5.)

---

[3] The allegations set forth in this Memorandum are taken from Collazo's Complaint. (ECF No. 1.) The Court adopts the pagination supplied by the CM/ECF docketing system.

[4] Collazo also requests commutation of his sentence. (*Id.* at 5.) The Court is not empowered to grant this relief in a § 1983 action. "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Jaffery v. Atl. Cty. Prosecutor's Office*, 695 F. App'x 38, 41-42 (3d Cir. 2017) (*per curiam*) ("[T]o the extent Jaffery seeks dismissal of the charges against him as a result of constitutional violations, such relief is only available through a writ of habeas corpus."); *Duran v. Weeks*, 399 F. App'x 756, 759 (3d Cir. 2010) (*per curiam*) ("[T]o the extent that Duran is seeking dismissal of the charges against him as a result of

II

The Court will grant Collazo leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[5] Accordingly, his Complaint is subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and must be dismissed if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quotations omitted). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Collazo is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

III

---

constitutional violations, he is essentially asking for relief only available through habeas corpus."). Accordingly, this claim is dismissed without prejudice to Collazo filing a *habeas* petition seeking this relief.

[5] Because Collazo is a prisoner, the Prison Litigation Reform Act requires that he pay the full filing fee in installments regardless of the outcome of this case.

Since he used the Court's preprinted form available to prisoners to assert civil rights claims, the Court understands Collazo to be asserting constitutional claims against Rosenthal and the Superintendent of SCI Chester based on an alleged error that occurred during Collazo's kidney removal surgery and his exposure to COVID-19. Collazo's claims are best construed as Eighth Amendment claims asserting deliberate indifference to his serious medical needs. *See Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 248 (3d Cir. 1999) ("We apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name.")

A

The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)). *See Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

1

Collazo asserts claims against Rosenthal, who is alleged to be an employee of Suburban Community Hospital in East Norriton, Pennsylvania.  The Court understands Collazo to be asserting a claim against Rosenthal based on the alleged error that occurred during Collazo's kidney removal surgery.  Collazo also alleges that Rosenthal participated in delaying or denying him medical care.  (Compl. at 3.) Whether Rosenthal may be considered as acting under color of state law — i.e., whether he is a state actor as that term is used in § 1983 — depends on whether there is "such a close nexus between the State and the challenged action' that seemingly private behavior may be fairly treated as that of the State itself."  *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted).  "To answer that question, [the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity."  *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted); *see also West*, 487 U.S. at 49, 54 (1988) (stating that, to act under "color of state law" a defendant must be "clothed with the authority of state law; and holding that a physician who is under contract with the state to provide medical services to inmates at a state-prison hospital acted "under color of state law" within the meaning of § 1983 when treating an inmate.")

Whether or not outside medical providers, to whom prison officials refer inmates for medical treatment that the prison cannot itself provide, can be deemed to be state

actors generally turns on whether those providers do so pursuant to a contract with the state. *See Illescas v. Annucci*, No. 21-8473, 2022 WL 17539696, at *4 (S.D.N.Y. Dec. 7, 2022) (collecting cases and distinguishing between defendants that treat prisoner plaintiffs at private hospitals where there is no allegation that the treatment is "provided pursuant to a contract between the government and the private hospital" and non-public medical providers that provide inmates with medical treatment outside of a prison pursuant to a contract, and holding that the latter may be state actors); *Bevins v. Becker Cnty., Minnesota*, No. 16-4340, 2018 WL 7247176, at *10 (D. Minn. Oct. 30, 2018), *report and recommendation adopted*, 2019 WL 397322 (D. Minn. Jan. 31, 2019) (finding private physicians were not state actors where there was no contract and no proof of an ongoing relationship between the jail and the physicians, where it appeared that inmates were taken to physicians' facilities on an as-needed basis, and the physicians treated inmates in a private facility and exercised independent medical judgment); *Griffis v. Medford*, No. 05-3040, 2007 WL 2752373, at *6 (W.D. Ark. Sept. 20, 2007) (finding that "a private physician treating an inmate at a private facility utilizing his independent medical judgment is not answerable to the state and does not act under color of state law for purposes of § 1983"); *Sykes v. McPhillips*, 412 F. Supp. 2d 197, 204 (N.D.N.Y. 2006) ("Dr. Jagoda's non-contractual provision of medical services outside of the prison context, in an emergency room, is not sufficient conduct to support a finding of state actor"); *see also Steele v. Meade Cty. Jail Officials*, No. 06-5087, 2008 WL 4449924, at *2 n.1 (D.S.D. Sept. 18, 2008) (citing cases examining whether the actions of private physicians who are not under contract with the jail fall under the umbrella of state action); *cf. Connor v. Donnelly*, 42 F.3d 220, 222-23 (4th Cir. 1994) (holding that private physicians who treat state prisoners without a contract are

state actors because of their function of providing medical care on behalf of the state and with the state's authorization).

Collazo's allegations against Rosenthal are so undeveloped that it is not clear what role Rosenthal allegedly played in Collazo's treatment. Moreover, there is no allegation that Rosenthal acted pursuant to a contract with the Commonwealth. Because the only allegation as to Rosenthal is that he is an employee of a private hospital, Collazo has not stated a plausible constitutional claim against Rosenthal and the claim will be dismissed. Collazo will be granted leave to amend this claim, if he can cure the defect identified by the Court.

2

In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element; a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998). "Suits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017). Collazo asserts a claim against the Superintendent of SCI Chester, presumably based on his supervisory role at that facility. However, liability under § 1983 cannot be predicated on *respondeat superior*. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 22015); *Robinson v. Delbalso*, No. 22-2378, slip op. at 3-4 (3d. Cir. Nov. 28, 2022) (*per curiam*). There are, however, "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate

indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)).  To set forth a claim for supervisory liability under the policy-and-practice element of supervisory liability, a plaintiff must:

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

*Chavarriaga v. New Jersey Dept. of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015) (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001)).  "Put another way, the [plaintiff] must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the [plaintiff's] risk of injury and must establish a link between the supervisor, the act, and the injury." *Id.*

"Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*  Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation.  *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.'  However, a director cannot

be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)).

"Under Section 1983, a supervisor may be liable for [his or her] failure to train or supervise employees. . . ." *Whitfield v. City of Philadelphia*, 587 F. Supp. 2d 657, 666 (E.D. Pa. 2008). A claim for supervisory liability or liability based upon a failure to train involves four elements: (1) that an existing policy created an unreasonable risk of constitutional injury; (2) the supervisor was aware of this unreasonable risk; (3) the supervisor was indifferent to the risk; and (4) the injury resulted from the policy or practice. *See Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). Where a need for "more or different training . . . is so obvious, and the inadequacy so likely to result in constitutional violations, that the failure to train . . . can fairly be said to represent official policy," *City of Canton v. Ohio*, 489 U.S. 378, 390 (1989), and that failure to train "actually causes injury," a supervisor may be held liable. In addition,

> In resolving the issue of [supervisory] liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [supervisor], for the officer's shortcomings may have resulted from factors other than a faulty training program. . . . Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training. . . . Moreover, for liability to attach . . . the identified deficiency in [the] training program must be closely related to the ultimate injury.

*Id.* at 390-91.

Collazo does not allege that the Superintendent established a policy, practice or custom that resulted in the conditions of which Collazo complains. He also does not allege whether or how the Superintendent himself participated in the alleged violations. Additionally, Collazo does not allege that the Superintendent was aware of and indifferent to an existing policy that created an unreasonable risk of constitutional

injury and which resulted in injury to Collazo.  Moreover, "[i]f a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004); *see also Carter v. Smith*, 483 F. App'x 705, 708 (3d Cir. 2012) (*per curiam*) ("Prison officials cannot be held to be deliberately indifferent merely because they did not respond to the medical complaints of a prisoner who was already being treated by the prison medical staff.").  Accordingly, Collazo has not stated a plausible supervisory liability claim against the Superintendent and the claims against him will be dismissed without prejudice.

3

Collazo broadly alleges that the Defendants delayed and denied him medical care, a claim the Court construes as one asserting deliberate indifference to Collazo's serious medical needs involving his kidney condition.  To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.  *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994).[6]  A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.  "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a

---

[6] The standard under the Eighth Amendment for convicted prisoners and under the Fourteenth Amendment for pretrial detainees is essentially the same for purposes of this analysis and courts cite cases applying either amendment.  *See Moore v. Luffey*, 767 F. App'x 335, 340 n.2 (3d Cir. 2019); *Parkell v. Morgan*, 682 F. App'x 155, 159-60 (3d Cir. 2017) (*per curiam*).

lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted); *see also Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991) (holding that a serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering.")

Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). And again, if a prisoner is under the care of medical experts, non-medical prison officials will generally be justified in believing that the prisoner is in capable hands. *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).

Collazo's single reference to delayed or denied medical care is conclusory and fails to state a plausible claim and the Court dismisses it without prejudice.

4

Collazo broadly alleges that he was exposed to and contracted COVID-19 while incarcerated at SCI Chester. (Compl. at 3.) He seeks recovery for a variety of physical symptoms and the Court understands Collazo to be claiming that some of these physical ailments are the consequence of his COVID infection. (*Id.*) The Court construes this claim as one for deliberate indifference asserted against the Superintendent of SCI Chester.

11

In its decision in *Hope v. Warden York County Prison*, 972 F.3d 310, 325-31 (3d Cir. 2020), the United States Court of Appeals for the Third Circuit affirmed that "[t]o establish deliberate indifference [in the COVID-19 context, the prisoner plaintiffs] must show the Government knew of and disregarded an excessive risk to their health and safety." *Id.* at 329 (citing *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000)). The Court of Appeals further held that "[t]he context of the Government's conduct is essential to determine whether it shows the requisite deliberate indifference," and that, in evaluating this context, a reviewing court must defer to the expertise of both medical officials and jail administrators, and not assume a constitutional defect where concrete action has been taken in response to the COVID-19 pandemic as constitutional rules "are not subject to mechanical application in unfamiliar territory." *Id.* at 329-30 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998)). Thus, where the facility has taken concrete steps toward mitigating the medical effects of COVID-19 on a detention facility, a prisoner will fall "well short" of establishing that the facility and its staff were deliberately indifferent toward his medical needs in light of the virus even though they cannot entirely "eliminate all risk" of contracting COVID, notwithstanding even serious preexisting medical conditions the prisoner may have. *Id.* at 330-31; *see also Mincy v. Governor of the Commonwealth of Pennsylvania*, No. 21-3263 (3d Cir. Sept. 9, 2022) (*per curiam*) (affirming dismissal of amended complaint and the finding that further amendment would be futile where "many preventative measures that were taken from the start of the pandemic, including the suspension of in-person visits, screening of staff for the virus, inmate quarantines, and the provision of masks and cleaning materials. In light of these measures and the unprecedented and evolving nature of the pandemic, Mincy does not have a plausible claim that prison officials

disregarded an excessive risk of harm."); *Muata v. Hicks*, No. 21-3210, 2022 WL 2526692, at *1 (3d Cir. July 7, 2022) ("Even if plaintiffs could show that Slaughter and Hicks knew of the risk posed by COVID-19, despite its unprecedented and unpredictable nature, they have failed to allege that either defendant disregarded that risk when creating the prison's policies.")

Collazo alleges only that he was exposed to and contracted COVID-19 in or about December 2021 while incarcerated at SCI Chester. He does not allege how the Superintendent at SCI Chester was responsible for his exposure to the infection, or how the exposure constituted deliberate indifference to Collazo's medical needs. Even if he had done so, Collazo's diagnosis with the virus alone is an insufficient basis upon which t to establish a constitutional violation. *See Hope*, 972 F.3d at 330 (explaining that the Constitution does not require the government to entirely eliminate the risk of contracting COVID-19 in a prison setting, stating "[plaintiffs] argue that the Government must eliminate *entirely* their risk of contracting COVID-19. That task is not the constitutional standard, however."); *Adames v. Pistro*, Civ. A. No. 21-2855, 2021 WL 2903064, at *2 (E.D. Pa. July 9, 2021) (dismissing on screening a *Bivens* claim asserting deliberate indifference based solely on exposure to COVID-19 in prison). Accordingly, Collazo's deliberate indifference claims against the Superintendent of SCI Chester based on his COVID infection are not plausible and will be dismissed with prejudice.

B

Collazo also appears to be asserting against Rosenthal a state law medical malpractice claim. Because the Court has dismissed his federal claims, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any state law

claims asserted by Collazo. Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)). An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment." *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010). It is the plaintiff's burden to establish diversity of citizenship, *see Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the parties and that the amount in controversy requirement has been met); *Jackson v. Rosen*, C.A. No. 20-2842, 2020 WL 3498131, at *8 (E.D. Pa. June 26, 2020).

Collazo does not allege the citizenship of the parties. He provides only the address of SCI Greene for himself, and the address of Suburban Community Hospital for Rosenthal. Both are Pennsylvania addresses, which suggests that he and Rosenthal

may both be Pennsylvania citizens.  Accordingly, Collazo has not sufficiently alleged that the parties are diverse for purposes of establishing the Court's jurisdiction over any state law claims he intends to pursue.

IV

For the reasons stated, the Court will grant Collazo leave to proceed *in forma pauperis* and will dismiss with prejudice claims pertaining to his COVID infection.  The remainder of Collazo's federal claims will be dismissed without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  His state law claims will be dismissed without prejudice for lack of subject matter jurisdiction.  Collazo will be granted leave to file an amended complaint.  If he chooses to amend his Complaint, Collazo should be mindful of the need to describe in as much detail as possible the conduct engaged in by each Defendant, or by any other individual personally involved in Collazo's medical care or other treatment while incarcerated.  If Collazo cannot identify an involved individual by name, he may identify them as "John/Jane Doe" defendants.  Collazo should, to the extent possible, "flesh out [his] allegations by . . . explaining in [the] amended complaint the 'who, what, where, when and why' of [his] claim."  *See Gambrell v. S. Brunswick Bd. of Educ.*, No. 18-16359, 2019 WL 5212964, at *4 (D.N.J. Oct. 16, 2019).  Additional instructions regarding amendment are included in the Order accompanying this Memorandum.

**BY THE COURT:**

***/s/ Gerald J. Pappert***
**GERALD J. PAPPERT, J.**